The final matter on the call this morning is case number 122261, People of the State of Illinois v. Kirk Zimmerman, Agenda number 4. Counselor, you may proceed. And I understand Appalachian Council have divided their time. You'll be responsible for making sure you stay within the limits. Thank you. My name is Joe Banty. I represent Kirk Zimmerman, the defendant in the underlying criminal action and the appellate in this matter. May it please the court, first, we agree with the state that the court lacks jurisdiction over an appeal of an interlocutory order in that it's not a final appealable order. The state briefed that matter extensively in its brief, and I would defer to the state to address that matter. I'd rather turn my attention to the merits of this. On the merits, we request that this court reverse the court of appeals. Let me just stop you there, Counselor. So you're – and I do have some questions for the state because they want us to hear it anyway. But you are agreeing that it's not – there's a jurisdictional problem and that you want us to look at this under the supervisory authority the same way the state is asking us? That would be correct, Judge. Okay. Now, having laid that groundwork, it would strike me as appropriate to address the merits of the case. Well, we can ask them some questions regarding it. That's fine. Okay. So on the merits, we request that this court would reverse the court of appeals and uphold the ruling of the trial court, retaining the motions in limine under seal until a jury is impampled. That was the order of the trial court. This case involves competing public interests. The issue in front of this court involves competing public interests. The public's right to access court records versus the defendant's right to a fair trial. Embedded in the right to a fair trial are privacy interests, protecting information about trial strategy, preparation, privacy interests of third parties, including family in this instance, and the people's interest in an ongoing criminal investigation. The question I submit that is before you is this. Does the presumption of public access of information in court proceedings under the First Amendment and common law apply to motions in limine where those motions identify prejudicial and irrelevant evidence that the state agrees is irrelevant, and where the trial court granted the motions and ordered them to be sealed until the jury is impampled? Counsel, may I ask you to break some of that down? Tell me about this presumption of access. We're talking about access to documents, correct, not access to the courtroom? That is correct. Okay. Can you tell me in your analysis, is the First Amendment analysis the same as the common law analysis, or are there distinctions? It is not. There are distinctions. The common law is broader. In other words, there is a broader presumption of access to our court system and to information in our court system that is in the First Amendment. Is it common law or in the First Amendment? Which one are we talking about? Under the common law. Okay. Now, having said that, as you review pertinent court cases, and I would refer to People v. Kelly, for instance, the appellate court there seemed to blur the distinction and ultimately ended up with a very comparable analysis under both, which is the experience and logic test of whether or not that the presumption applies. Well, so let's talk about, do you agree that the Nixon case is the source of this common law idea? Or at least the first time the United States Supreme Court has spoken? There seems to be a chance, yes. Okay. And so the Nixon case talked about a common law presumption in favor of public access to judicial records. The court declined to delineate precisely what the contours are, but observed that it's not absolute, that every court has supervisory power over its own records and files, and public access may be denied based on the facts and circumstances of a particular case. Would you agree that is the standard that we should be using when we look at the common law right to access claim? Yes, I couldn't argue with that. I think that is the state of the law, yes. Okay. And is there a different analysis than under the First Amendment? Well, yes, the First Amendment asks, uses an experience and logic test, which I think is comparable to the Nixon, but the experience and logic asks, one, have documents, information been historically open to the public, which is experience, and, two, does the public access to such information play a positive role, which is the logic prong. And I think that test and what you outlined in Nixon is ultimately comparable. So the same thing? The First Amendment and the common law is the same thing? I think ultimately, and for purposes of this analysis, we could treat them as the same, yes. Have I answered your question enough? Well, that's your position. Thank you, Judge. So there's a determination that has to be made whether these documents are presumptively accessible, right? Correct. And then if they are, whether the defendant can rebut that presumption, right? If the presumption applies, then it would be up to the, yes, then it would be up to the trial court to determine whether the presumption is rebutted. Is it of any consequence that the defendant filed motions in limine in this case, and those became a part of the trial court record, which, I mean, would make them presumptively accessible, right, to the public? Once a part of the record? I mean, was it a decision of trial strategy by the defendant? And once he put them of record, did he make them presumptively accessible? And now we have to find out whether or not that you can rebut that presumption? Here's how I would reply to that. Bear with me to answer your question. Sure. Zimmerman is accused of murder. I would submit to you that murder is arguably the most serious matter adjudicated in our judicial system. The state's attorney represented that they did not intend to introduce evidence contained in the motions in limine. Okay? So as the defense counsel, you could have accepted that and relied upon it and simply allowed the case to have moved forward and gone to trial. I would submit to you that in a murder trial such as this, it is the duty of counsel to defend. We all know it's the duty to defend with zealous advocacy and that that contains extensive and exhaustive efforts. And I would submit to you that it's incumbent upon defense counsel in a situation like this not to rely upon informal representations of the state's attorney, where the result of breaching that could be a witness or the state's attorney itself. And I'm not suggesting they have any intention of acting properly. But the result could be a witness or the state's attorney either inadvertently or purposefully revealing information contained in the motions at trial I'm talking about. So I would submit to you that you can't leave those types of potentially serious issues to chance. Well, the inadvertent aspect of that could happen even if a motion in limine was granted, right? Yes. And whether there's an effort to introduce it at trial could be handled with an objection, couldn't it? It's possible except that when you have a ruling on a motion in limine, you have certainty in writing under a court order about what is then admissible and not admissible, at least with respect to those motions. So everybody knows the ground rules, not just informally, but with clarity and with certainty so that if information, if the state or a witness would creep into eliciting some of that improper information, it could be addressed swiftly and properly. Whereas if there is not a motion in limine that is ruled upon, then you're dealing, then you have a higher potential, I would submit to you, of a mistrial, of appeals, which actually emphasizes the importance of motions in limine. I'm not disagreeing with you, but it does beg the question that I asked, and that is, is it a matter of trial strategy since there are other ways to handle it, and these motions being made of record by the defendant then make them presumptively accessible? Yes. I think it's fair to say it's a matter of trial strategy to some extent. Understand this, and here would be a critical position to understand on the defense side of this. Had the motions in limine were filed and they were granted to be filed under seal, had the trial court not granted that motion, then we can see that if we would have then filed our motion in limine, then the presumption would have applied. We would have done that at our own risk. To me, there would be no question that the presumption would apply, and we would have potentially exposed that information. But when the trial court chose to seal that information, and that was based at least in part upon the fact that the state indicated it did not intend informally, did not intend to introduce that information contained in that, it seems to me we didn't open the door, so to speak, to then allow the presumption to apply and then to allow public access to attach. So you're really saying you're being placed in a catch-22 position, because if you don't file it, there are risks that might be negative to the defendant. But if you do file it, then information may be released that's negative to the defendant. Yes. And just play that out for a second. The answer to your question is yes. And play that out for a second. Think of the position of – and Mr. John Rogers is the lead trial attorney. He'll be trying the case when it goes to trial. Of the position of what if he doesn't file that motion in limine, and this blows up at trial, so to speak, and the information begins to come all over the record. And his client or someone else who second-guesses this as to effective counsel says, what do you mean? You mean to tell me you didn't file a motion in limine and make sure that that information wouldn't have come in and that the court would have addressed that and that you knew what the ground rules were prior to trial? I mean, that strikes me as potentially being highly ineffective. So I think we are caught in a catch-22, and I think the safest and appropriate measure to have taken was to file the motions. And once the trial court said you can do it under seal, then I think there was a cloak of safety there on our part. Had they not, then it would have been a difficult decision. And we would have had to weigh on our own whether we thought the presumption was more important than the motion itself. So you're not arguing, then, that the presumption of access doesn't apply to motions in limine in general? Not in general. It's only because of the request that this be filed under seal. In other words, you are conceding that if you just filed it, it would have been available. Yes. I'm submitting that it doesn't apply under the facts of this case for two reasons. One, it was filed under seal. And two, we all know that the information was irrelevant. It was not admissible. Okay? All right. Could I nail you down on this second piece, too? And then I'm back to the technicalities here. So what does our case law and what does the United States Supreme Court case law say about what has to be shown for closure? So they apparently have these two standards. One is if they determine that a First Amendment presumption is triggered because of this idea that these proceedings have been historically open to the public, then the court has said, in order to overcome that, there must be shown an overriding interest based on specific findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. And then secondly, I think you'd agree that when the Supreme Court has talked about generally common law ideas of access to records, it said that every court has supervisory power to its own records and files. Public access may be denied based on the facts and circumstances of a particular case. Are those two different analyses? And which one are you arguing here? I think ultimately they can come down to the same. So that's really your thing. The two standards are exactly the same, and whether it's narrowly tailored or not, or just facts and circumstances, those distinctions don't matter? In this sense, they don't matter because we have facts of this case that tell us that the presumption should apply under either standard. It's really my position. I'm not trying to rewrite the law for this court or suggest that the law be rewritten, or that I'm not trying to suggest that the law doesn't state a difference between the First Amendment and the common law, but I think in this case the distinction is important. Wouldn't you say in that second case that I read you, the Nixon case, the standard is much easier to meet? The court has supervisory power over its own records and may deny access based on any facts and circumstances in the case, versus it may only, under First Amendment analysis, only may be overcome only when there's an overriding interest. Based on specific findings, the closure is essential to preserve higher values and is narrowly tailored. Those seem like two different standards to me. But you're saying they're the same. I wouldn't argue with it. I judge I wouldn't argue with it, that they're two different standards. But under either standard, I would submit to you that the presumption doesn't apply in this scenario. But does this court have supervisory power over it? Of course it does. But I think the rule that the court could, so to speak, that could come out of this is that when you have a motion to eliminate, file, under seal, and when the underlying information contained in that is not objected to and is agreed by the state's attorney that it is irrelevant and it's not going to come into trial, that the presumption doesn't attach. And I don't think we need to go any further. In fact, I think that's what cases have said. It's actually that if that's the case, then the analysis stops there and the motion stays sealed and the information stays out of the public realm. I would also point out that remember that that's not falling back to the Nixon analysis. Keep in mind that there's an element of a timing issue here. The, under the court order, the motions are sealed until the jury is in the panel. So it's not, so the issue can and undoubtedly will be revisited. The notion, when we put our minds and opinions on the fair trial element of this, remember that if this information comes out at this time, it has a likely effect of impacting the fair trial element of this. This is a case that has a lot of publicity in Bloomington. I think the ability to impair the jury panel is significant. So we're not suggesting that the information may never come out, that the presumption won't apply at some time. It's just simply at this point in time. And I think that's significant for this court to consider in its determination. I will return on rebuttal. Thank you. Thank you. Mr. Craven. May it please the court, counsel. Don Craven on behalf of the Panagraph WGLT and the Illinois Press Association, the media interveners in this case. I think we need to start with how we got here and why this case is properly before this court. As we have done in many cases before, in this case we filed a petition to intervene in a criminal case in order to gain access to court documents. Intervention is a concept that arises out of the Code of Civil Procedure, but it has been used and adopted in many criminal cases for the same purposes that we used it here in this case. It's been adopted in some of those cases with some discussion by the trial court and the appellate courts and sometimes without much discussion, such as in the Peeble case, the LeBron case, this case, In re Deen. The courts have seen this as an appropriate way to come into a criminal case for the purpose of raising limited questions of access either to documents or to the courtroom. What makes it appropriate, Mr. Craven? What makes this an appropriate way to bring the appeal? There are instances where this court has mixed the Code of Civil Procedure with criminal cases, such as the use of Section, the application of Section 2-1402, where we can final judge, and it's explicitly found that that applies to criminal cases, Peeble v. Vincent, as an example. In the intervention, the appellate court in the Kelly case and the Seventh Circuit in the Jessup v. Sluker case look at the alternatives of, do we allow intervention, do we want to do this by mandamus, do we want to do this by supervisory order, and both federal and state courts have found that intervention is the appropriate method. It allows for the development of a record. It allows for a timely way to move these cases through the system. And just as intervention... So you're not disputing that 307A is a civil appeal rule? Given the fact that right above the words, Rule 301 says civil appellate rules, no. But there is a distinction. If you look at 301, and I believe it's 303, they talk about appeals that civil... The language of the text, the text of the rule says, it appeals in civil cases. 307 does not have that language in it. 307 allows for appeals from injunctions, and it doesn't say in criminal cases. Yeah, that's a good point. If we're willing to call the trial court's order sealing the fourth and fifth motion and limiting an injunction, which some people might say is a stretch, that would make any such order immediately appealable, right? If these are injunctions, everything's an injunction. There's a distinction in the jurisprudence of Rule 307 between injunctions, and I would submit that this is an injunction, and more administrative rules that this court and the appellate courts have found to be administrative and not... So your argument is slightly different. Both the defendant and the state would say, it's not properly before us, but use your supervisory authority and, as we said, we'll talk to the state about that. But you're saying that it is legitimately here and we don't need to utilize our supervisory authority. I think this case is legitimately here. I think those other cases that I've cited were legitimately before the appellate court. In the alternative, I would ask you, in this case, to use your supervisory authority. I don't think that's necessary. And as a practical matter, you'd be, pardon my bluntness, but you'd be setting yourself up for a supervisory order every time you see a court record. That's a great point. And I'm not sure that this court wants to put itself in that position.  And, of course, Goldnick found sealing the counterclaim in that case to be an injunction. The other cases that I've cited found such an order to be an injunction in... And I don't mean this to make fun of the issue of appellate jurisdiction, but in In Re A Minor, the 1989 case from Iroquois County, there are two In Re A Minors. The court was... The order in that court case, the trial court, ordered the newspaper not to publish the name of a minor. And they issued their entry into the juvenile court case on that order. And this court was considering whether that amounted to an injunction and found that it did, applying the well-known maxim of Illinois jurisprudence that an apple calling itself an orange remains an apple. It's an injunction. The court has ordered us not to do something that we are otherwise free to do. And... Is it a temporary injunction or preliminary injunction? In that case? No, in our case. No. Didn't the court say it would re-evaluate after the jury was picked? Yes. So how is this a permanent injunction? Because it's the denial of our rights under the First Amendment to access a public court record, and the denial of First Amendment right to free speech or access to court records is an ongoing violation from day to day. So you have some sense of a constitutional right to immediate access rather than hear the court saying we can re-evaluate this later? No. I think there is a right of immediate access. Where does that come from? The First Amendment. From this court's decisions in Skolnik. Did they use the word immediate? They did not use the word immediate, but upon filing. The language in Skolnik is when it was filed with the court. The language in Johnston, when once documents are filed with the court, they lose their private nature and become part of the court file and public components of the judicial proceedings to enforce the right of access and patience. So it's of no moment that the court said we'll re-evaluate later? No, it's not. It remains a violation. It remains an injunction. Remaining an injunction, is that the answer to the question of why should the media, as interveners, be allowed to take an interlocutory appeal when the state and the defendant couldn't do so? Yes. Because it is an injunction as to our protected First Amendment activities. Thank you. On that note, we would ask the court to adopt explicitly the procedures that have been used here and used effectively in other cases. We find that the application of the intervention rule and Rule 307A as a basis of jurisdiction on appeal will profit. There's no need for official rulemaking. There's no need for the use of supervisory authority of this court. We would ask you to adopt. Would adopting your position mean that we would attach the First Amendment presumption to defeat the filing of any motion in limine under seal? There's no reason ever to file a motion under seal because it would always be presumptively available to the press. It is presumptive. Once filed, the language of Skolnik and the language of the other cases is once filed, it is presumptively open. Does the court retain authority to seal things? Yes, under the limited circumstances that were mentioned before. Can I go back? Under which circumstances? Because as far as I can tell from my own reading, it sounds like there are two different standards. One is much more demanding than the other. Basically, the one is overriding interest based on specific findings that it's essential to preserve higher values and is narrowly tailored versus the other standard is the court has supervisory powers over its own records and may deny on the facts and circumstances of a particular case. Are those the same standards? Are those the same standards? No. Okay, so which one applies to what? The constitutional standard. I would suggest that the language you're reading from Nixon, as with all common law doctrines, has been scrutinized, narrowed, and has evolved. And this court has said that in Illinois, the common law and the constitutional presumptions are parallel and have applied them in the same manner. So therefore, the first step then in deciding whether there's a presumption to access is to decide if what we're talking about has been historically open to the public. That's the language of the First Amendment idea and not of the common law. So first we have to talk about that. Isn't that where the trial court went and said, historically documents that have been exchanged in discovery that are not going to be entered into evidence are not open to the public? So it doesn't – don't we end right there? We're not talking about discovery documents anymore. We're now talking about an attachment to a motion in limine submitted to the court for the court's decision-making process. And has that kind of document historically been open to the public? Motions in limine, yes. Discovery, no. Motions in limine, yes. As Justice Turner noted, motions in limine often go to either discovery abuses, discovery controversies, police – he used the term police misconduct. It could be an over-eager detective doing something. But motions in limine, as counsel suggested here, have traditionally been open. I would suggest that this record demonstrates that motions in limine have traditionally been open because this is motions in limine 4 and 5. No such motion to seal was presented or considered with respect to motions in limine 1, 2, and 3. Motions in limine are open for all the reasons that Justice Turner cited and the court in Johnson noted the need for understanding of the judicial process and the judicial decision-making process. Can this be overcome by an overriding interest based on specific findings that closure is essential to preserve higher values and narrowly tailored to that interest? Yes. So why isn't this the kind of case where there's potential evidence that appears to be such that the court and the state says it should not be admitted in evidence? Why is that not the kind of evidence – not the kind of document that – where closure is essential to preserve a higher value? Because one of the things it gets at, as you're looking at a motion in limine, is the actions of the police department, the actions of the state in presenting and gathering this material. And this court, again, going back to Skolnik, used the language that it's not enough that it's embarrassing, it's not enough that it – everything is prejudicial to somebody at some point, but it's a much higher standard than it's embarrassing or it's not admissible. Motions in limine are argued every day, evidence found not to be admissible, and you read about it in the newspaper the next day. But that leads to an understanding of how the judicial process works, and it leads to a greater appreciation for the fairness of the process. It may be – what we're trying to protect here are the fair trial rights of the defendant. These motions were filed in October and November of 2016, which was a while ago. And isn't this case being argued on appeal in the Fourth District today? Yeah. Okay. This case isn't going to be tried in the – and I'll close to let my co-counsel, however, argue. But this case, unlike Kelly, where the judge reiterated several times the proximity to jury selection, we're a long way from jury selection. And unlike Kelly and the case that he relied on in Kelly, the – Michael Jackson in this case? Somebody. There's not a media board here. We're talking about a newspaper and a radio station, and we're not talking about 330 media outlets. And I would also remind the court in the Johnson case, the Fourth District laid out the other elements that must be overcome, which include court care and a change of venue in order to – before you – before the court would consider denying access to a motion or hearing. Thank you. May it please the court, I am Assistant Attorney General Gopi Kashyap on behalf of the people of the state of Illinois. Ms. Kashyap, do you wish you went first? Maybe, but I'm hoping that the Chief Justice will give me some more time. Good answer. The question I have that I've mentioned to counsel now with respect to – if we agree with you and the defendant that this is an improperly brought interlocutory appeal, and let's just say for purposes of argument we agree with that,  so, you know, which would be an improperly brought interlocutory appeal brought by an intervener, and you're saying we should entertain this under our supervisory authority. My question is a simple one. How is it appropriate for us to exercise our supervisory authority, if we agree with you, to entertain a proceeding that our own rules don't even allow? This court has done that before. I can't remember the name of the case. It's in our brief. There was no appellate rule that clearly provided jurisdiction to review the order that was entered in that particular case, and the court chose to review it under its supervisory authority anyway. I would say that here there are lots of constitutional interests at stake, and the importance of the issue I think warrants this court's review, partly because there is so much confusion in the appellate court on the proper standards and how they apply. But more importantly, this court did grant appeal in this case to review these questions, and the press could have filed a supervisory action, and we would think given the importance of the issues, the court might want to exercise the supervisory authority in these types of circumstances. Whether this court should, of course, is up to the court, but we think clarification is necessary on these issues. The appellate court has operated under different standards in civil cases and criminal cases, and the First Amendment and the common law presumptions have been equated in some circumstances, and we think it's necessary to draw the distinctions out, look at all the case law, and see how this should all operate, which will provide guidance to the courts below. This isn't going to be the first publicized case. This isn't the first case where a case is really relevant to the public and that litigants might file motions in order to seal components of the trial or the records that are filed. And so it's really important that this court give guidance on what the First Amendment presumption is, what the common law presumption is, how they apply it, what the standards are. And so for those reasons, we think it's important that the court exercise it. Nor will it be the last case, right? Sorry? Nor will it be the last case. No, it will not be the last case. Great. I will turn to the merits, since that seems to be the most important, or at least the standards. Turning first to Justice Tice's questions about the distinctions, there are two sources of the right of access, the First Amendment and the common law, and they are distinct, and the standards that govern them are distinct. And although they serve similar purposes, ensuring open justice, they operate differently. And this isn't unusual. So, for example, the right to counsel, sometimes it's of a constitutional dimension under the Sixth Amendment, but sometimes it's not. It's of a statutory dimension. And the legislature, if it provides a statutory right, can take away that right. But it can't take away the Sixth Amendment right, and it can't modify it. The First Amendment and the common law presumptions of access are similar. This Court can't modify the First Amendment presumptions of access. But it can modify the common law presumption, and it can change the standards to the extent it seems necessary. And so there are two different, and they are parallel, but they're not equal, and they apply in different circumstances, and we think it's important that the Court clarify that. As to the First Amendment, the U.S. Supreme Court has announced a specific test for determining when the First Amendment presumption of access applies to particular court proceedings. Courts across the country have extended this test and applied it to court records as well, and also to civil cases, even though the U.S. Supreme Court has not done so. This Court did that in Skolnik. And so the question on the First Amendment is, to what records or to what proceedings is the public's interest at its peak? And when the public's interest is at its peak, the First Amendment applies a presumption of access. And once that presumption applies under the experience and logic test, the standard to overcome it, as Justice Tice announced, is heavy. It's an overriding interest. It's a narrowly tailored means. I think Justice Tice asked, what does it mean? What is the difference between the standards between the common law and the First Amendment? And the critical difference, I believe, is the least restrictive means component of it. And that is that when you look at the survey of the U.S. Supreme Court cases, they talk about looking at whether Vaudeer would protect the countervailing interest, would protect the public's right of access while also protecting the countervailing interest. A change of venue, sequestration, redaction. There are all sorts of ways that the trial court could give the public access, perhaps to limited information, not all of it, maybe redact the components that would violate a third party's privacy rights, but also conduct a Vaudeer that would solve, or hopefully. We always say that Vaudeer is good at making sure the jury is not biased. And so whether all of that would be sufficient. I think Nebraska Free Speech Association is the case where the U.S. Supreme Court also talked about these least restrictive means that the trial court must address before closing proceedings. And we think that a similar analysis applies when the First Amendment presumption attaches to court documents. By the way, you are conceding that the First Amendment attaches to court documents as well as proceedings? In your brief you point out that the Supreme Court has never said that. We are conceding that because this Court said so in Skolnik. And most courts across the country have done so, and so we think it makes sense to do so. There are going to be those documents like a motion to suppress that go to allegations of police misconduct where the experience and logic test will mostly be satisfied. And so the First Amendment presumption should attach to that motion just like it would to the hearing. And so we do think that the First Amendment presumption should attach to similar records. The common law presumption attaches to all court filings. And once a defendant or a party chooses to file something in court, they are seeking judicial action. And it is the judicial process that the First Amendment or the common law are protecting. And everything is on a continuum. There are going to be those records that satisfy the experience and logic test, and so the First Amendment will apply to those. And then we will move down the continuum, and there will be those records like discovery. There used to be, I think under Federal Rule 28, the prior version, litigants would file their discovery in court, not asking for judicial access, but it would be filed in court, and that would be in the record. And so the common law presumption would apply. I think the federal courts dealt with it. But under Illinois' longstanding common law rule and the statute, once it's filed, it is a record, and the common law attaches. So I do think litigants need to make these choices, as Justice Garvin pointed out. This Catch-22 does exist, except once you file something and ask for the judiciary to become involved and rule, then you've put it in the public purview. And that's why the common law steps in and says, well, there's a presumption of access to what you just filed, and so we want to make sure the public can see it. Public plays a critical role in ensuring that the process is functioning as it should. And so that is why there is a common law presumption of access to all court filings. Turning, then, to the motions in Limine and issue here, we think that the motions in Limine are at best tangentially related to the criminal prosecution. There is no enduring tradition of access to motions in Limine. They didn't exist at the time the First Amendment was enacted or adopted. And it's unlike other proceedings, pre-trial proceedings, that also didn't exist at the time the Framers adopted the First Amendment. They're not trial-like. These particular motions in Limine don't go to critical evidence. They don't function like a trial. They are discovery that will not be admitted at trial. I do want to clarify that defendants stated that the State agreed that the information at issue here was not relevant. The State said it wouldn't admit the information and said nothing about whether it was relevant. And the State's attorney has been very clear on that point with me. So since there's no experience, since the experience prong is not satisfied, the logic prong also is not satisfied here because, again, it's not critical evidence. It's like that at issue in a motion to suppress. It's not part of the only process before the entry of a plea, like a motion to suppress or preliminary hearing. And it's not the sole occasion for the public to observe the criminal justice system. Instead, it's tangential information that won't be admitted. And as Justice Garland pointed out, some of this is, you know, the defendant put it into play because he wanted a clear ruling from the court. He wanted to make sure that the trial was going to be efficient and that there wouldn't be sidebars and there wouldn't be interruptions and we wouldn't waste the jury's time and we can take care of these things at the outset. So on balance, we don't think the experience and logic test is satisfied here. But there is, again, a common law presumption, and we think that the trial court here did not recognize that that presumption exists. It recognized the right of access, and it said that it was exercised as supervisory authority. Could you help me with this if I could just interrupt you for a minute? Because I'm really not sure at the end of the day what the appellate court did or I think maybe the argument you're making. So the trial judge had a lengthy order, decision, citing cases, and really most of his discussion was about the First Amendment rights, right? So were you asking – were you supposed to send this back and have him do the analysis over? No. So the trial court's holding – the trial court's basis for sealing the motions was because it found that no First Amendment presumption of access applied. And then it cited the fact that there exists a common law right of access and stated I'm going to exercise my supervisory authority and continue to seal that. We don't know whether the trial court thought about like why should it seal them. We don't know if the defendant overcame the presumption. So can this court just say based on the record that we see here we agree with what he did or we disagree? Why would we send this back for a second hearing? I don't understand. Because the trial court is the one in the county of the crime. It's the one that's aware of the publicity. The defendant has to prove there is prejudicial publicity even under the common law. It's not that a defendant can just assert that it's going to impact my right to a fair trial. There needs to be some evidence presented, specific or particular evidence. So did the court err by entering this order? He said he looked – the standard again says something about the authority of the trial court to manage records, taking the facts and circumstances of the case. Isn't that what the trial court did in this order? I think it's unclear on whether the trial court looked at precisely – looked at whether there was a presumption of access. We think that the court said there was a right of access. But whether there was a presumption in favor of access, whether everything was equal, I mean we would say that you still under the common law need to look at whether some other means are available to maintain the public's right of access and to balance the defendant's interest in a fair trial and third-party privacy interests, which certainly are at issue here. When you look at the motions, there's one of them, maybe the fourth one, I believe redaction might be appropriate. And we think the trial court should look at that. And the common law presumption attaches to court filings because we want the public to serve as a check. I believe that's my end of argument line. Chief Justice? You need two more minutes. Thank you. So I think it is necessary here to allow the trial court, who is in a better position to make these sort of factual determinations, and determine whether the common law presumption has been overcome, rather than determine just that there was a common law right, but that the court was going to exercise the supervisory authority to close. In sum, we ask the court to refer the issue of jurisdiction and the related question of intervention to the rules committee, exercise the supervisory authority to clarify the standards that apply under the First Amendment and the common law, and to remand to the trial court for further proceedings on whether a defendant has overcome the common law presumption. Thank you, Your Honors. Thank you. Rebuttal? I thought the court's question was well taken. Why send this back to the trial court? And it did make, it's already found that the presumption doesn't apply. It made sufficient findings in that regard. And I think this can be summarized and simplified on that alone. Having said that, let me return to a couple of critical points. I thought the state's attorney, I had actually very similar language that I think the case law has evolved, and you could put it together in a description, largely coming out of the Amadeo case, but others, that the issue involved, it rests on a continuum. That one end of the continuum is investigation that is nonpublic. The other end of the continuum is the trial itself, which, as we all know, is entirely public and should be. And things that go on in the middle are where the ambiguity lies, such as motions to suppress and motions to eliminate and things like that. The media, in its brief and in front of you, reiterated that one of the public's right to access is critical because of what's often occurring is scrutiny of police conduct and perhaps prosecutorial conduct, and that often follows, in fact, typically follows from motions to suppress. That's exactly what motions to suppress often are, is whether evidence or information has been obtained from the fruit of the poisonous tree. And it is significant for the public to have access to that information, to be able to scrutinize our court system and the judicial system and police conduct and understand the process and have faith in it. That's not what's occurring typically in motions to eliminate, and it's not what's occurring here. No one is questioning that there was any form of police misconduct in the information that was gathered or that the information was the fruit of a poisonous tree or something of that nature. Otherwise, there would have been a motion to suppress. The information was salacious, inflammatory, involved the defendant's character, conduct that I mentioned was irrelevant and I didn't mean to misrepresent the State's position that they agreed it was not admissible. I apologize for that because that is the State's position. My suggestion is it's also irrelevant. I want to read for you a statement from the State at the motion to seal. Quote, this is from the State's attorney. Quote, during a big case like this, there may be any number of things the State's aware of through an investigation that the press would never become privy of because the State never intends on offering these things as evidence. These things, meaning these things in this motion, these things fall into that vein. End quote. In other words, even the State is acknowledging that when you look on the continuum, the information that's involved in these motions is something much closer, much closer to the investigative process than it is to the trial process. In fact, the media's attorney referenced the fact, the proximity argument, and that we're not that proximate to trial. And I would suggest to you that that's exactly the case, that the information involved is in fact very close and it's a direct result of the investigative process, which is not public. In fact, had the motions not been filed and not been motioned, filed under seal, the information would have never crossed the media. It wouldn't have been a privy to the media at all. So the only reason we're here is because there was a motion that was filed under seal. Is it your argument that the nature of the information you referred to prior to the information as being either inadmissible or irrelevant, but does the nature of the information under seal matter to the determination of whether the presumption applies? And if so, do we have a complete enough record to make that determination? I think it does in this situation. Because of the nature of the information and because it was sealed and because the state has agreed that it's not admissible, you have a clear-cut situation in this case. That may not always be the case. There may be other circumstances where a motion in limine could... There could be different circumstances. So the distinction between, for instance, and let me just reduce it to this for simplicity's sake. The distinction between, say, a suppression hearing and a motion in limine is significant. It goes to both the common law and First Amendment presumption, however you frame that, which I would submit are parallel even though there's distinctions. And ultimately, the trial court in this circumstance following from your question, Judge, I think did make sufficient findings and a proper determination. I would submit to this court that it's appropriate to simply affirm the ruling of the trial court and that if the presumption doesn't apply, the matter is as simple as that. And thank you for your time. Thank you. Case number 122261, Petal versus Zimmerman, will be taken under advisement as agenda number four. Mr. Vante, Mr. Craven, Ms. Kasheff, we thank you for your arguments this morning. You are excused.